## PERHAM v. BUCHANAN COUNTY.

1. **Contract: BOUNTY OFFER.** The board of supervisors of Buchanan county passed the following resolution: " *Resolved*, by the board of supervisors of Buchanan county, that we hereby appropriate, out of the funds belonging to said county, not otherwise appropriated, the sum of one hundred dollars to each man who may enlist and be mustered into the military service of the United States from said county, under the recent call of the President for 300,000 men."— *Held*, that a soldier who duly enlisted on the faith thereof, and who was under such enlistment mustered into the service of the United States from said county, was entitled to the bounty offered, though

no quota was in fact due from the county under the call of the President mentioned in the resolution.

2. —— Nor would the fact that he was not mustered in on the day of his enlistment, nor even promptly, defeat his right to recover, the time nor manner of mustering in not being within his control, or made a condition by the resolution, except that it should be under the call.

*Appeal from General Term, Ninth District.*

TUESDAY, OCTOBER 26.

PLAINTIFF claims of defendant one hundred dollars, with interest since January 5th, 1864, as bounty due him for enlistment under the following resolution of the board of supervisors of said county, passed December 14, 1863:

"*Resolved*, By the board of supervisors of Buchanan county, that we hereby appropriate, out of the funds belonging to said county not otherwise appropriated, the sum of one hundred dollars to each man who may enlist and be mustered into the military service of the United States from said county under the recent call of the President for 300,000 men."

The answer is in denial.

The cause was tried to the court without a jury, and the following *facts found:*

" The resolution in question was duly published in the *Guardian*, the official paper of the county, in its issues after the passage of the same.

" The plaintiff, with other volunteers from said county, then in the service of the United States, whose term of service was expiring, at Larkinsville, Alabama, was furnished with a copy of said paper and informed of said resolution, and on the fifth day of January, A. D. 1864, was duly discharged from his then expired term of service, and then and there re-enlisted again for a new

term, and was mustered in under that re-enlistment on the third day of February, A. D. 1864, in Alabama, to the credit of Buchanan county, under the inducements of the aforesaid resolution and the government bounty of $402, and served under such re-enlistment until duly discharged from the service on the 11th day of August, 1865.

" The re-enlistment and muster in of plaintiff was carried to the credit of Greely Grove township, Buchanan county, on the muster roll of his company and regiment from the time of his re-enlistment and muster in, but no notice was received of such credit at the adjutant-general's office until the 24th day of June, 1864.

" Notice of the aforesaid enlistment, muster in and credit, in the regular course of official correspondence from the regiment through the various offices of the war department, did not reach the provost marshal of the district, whose duty it was to give the credit, until the first of May, 1864, and the credit was not in fact given until that time.

" That at the time of enlistment and muster in of plaintiff, as aforesaid, there was no deficiency of volunteers from Buchanan county, and no quota was due from said county upon the call in question.

" The proclamation of the President of the United States, containing the call referred to in the resolution in question, provided that if the quota of any districts under that call should not be filled before the 5th day of January, 1864, a draft should be made on that day in such districts to fill any deficiency therein. No draft was had in Buchanan county on said 5th day of January, because its quota under the call in question was full, and in those states and districts whose quotas were not full on that day a draft was had. That on the 1st day of February, 1864, another call was made by the President for 500,000 men, in which was included the call of October 17, 1863,

Perham v. Buchanan County.

under which a quota was assigned to Buchanan county, which was filled by volunteers enlisted and mustered prior to January 5th, 1864.

"That on the 14th of March, 1864, another call was made for 200,000 men, and the quota of Buchanan county thereunder was filled before the credit of plaintiff was received by the provost marshal. That plaintiff was credited to Buchanan county on its quota under the call of the President of July 18, 1864.

"No enlisted man could be credited to any county until he was mustered in."

Upon these facts the district court rendered .judgment in favor of plaintiff for the amount claimed. The defendant appealed to the General Term, where the judgment was affirmed, and therefrom this appeal is prosecuted.

*Shubael P. Adams* and *W. Chandler* for the appellant:

1. To entitle plaintiff to recover in this action, he must show that he enlisted and was mustered in from Buchanan county, under the call of the President of October 17, 1863, for 300,000 men.

2. The resolution of the board of supervisors must be construed in the light of the provisions of that call; and construed in that light the term, "from said county under the recent call," must be taken to mean, "*to the credit of said county upon its quota under that call.*"

3. No rights could accrue to plaintiff under the resolution in question until he was *mustered into the service.*

4. In order to entitle plaintiff to recover, it must be made to appear as *a condition precedent,* that he enlisted and was mustered in at such a time and at such a place that the county could have received credit therefor upon its quota under the call in question.

5. The case shows that he wholly failed to comply with the terms of the resolution, and that he was not enlisted and mustered in until nearly a month after the quota of

the county had been filled, and not until nearly a month after there would have been a draft in the county under the call in question, had there been a deficiency in its quota; and not in fact until after *another call* had been made and filled.

6. It is fair to presume that the county paid, under the terms of the resolution, one hundred dollars to each man who enlisted and was mustered in to its credit, until its quota was full.

*Lee & Hart,* and *Shiras, VanDuzee & Henderson* for the appellee.

Brief of appellee's counsel not found on the reporter's file.

COLE, J.—The resolution of the board of supervisors is a very brief, direct and plain one. The only condition upon which the payment of the offered bounty rests is, that the party shall enlist and be mustered into the service from said county, under the recent call of the President. There is no requirement that the enlistment shall go to fill a quota; that it shall operate to exempt from the impending draft; that the credit shall be reported to and properly entered upon the books of the provost marshal; nor any other than simply an enlistment and mustering in from the county under the call.

The plaintiff promptly enlisted under the inducements of the offer of bounty thus made, and was duly mustered into the military service of the United States from said county. The fact that he was not mustered in on the day of his enlistment, nor even promptly, ought not to defeat his recovery, because the time or manner of mustering in was not within his control, nor was the time or manner made a condition by the resolution, except that it was to be under the call. The only act which the plaintiff

could control was that of his voluntary enlistment; the mustering in, the credit, the report to the provost marshal, the prevention of the draft, and all other matters pertaining to the service, were beyond his control, and could not, under the terms of the resolution, be supposed to be within the duty or obligation of the party enlisting to either see after or to guarantee.

· Nor is the fact, if it be so, that there was no quota due from Buchanan county under the recent call mentioned in the resolution, any defense to the claim. The "recent call" was not exhausted so as to defeat volunteering under it, when the quota for Buchanan county was filled. The plaintiff could enlist and be mustered into the military service of the United States from said county after its quota was filled as well as before; and since the resolution did not require that the enlistment should be to fill the quota of Buchanan county, or even that it should be credited to it on its quota, such conditions cannot now be insisted upon. The plaintiff cannot be required to do more than is specified by the resolution under the inducement of which he enlisted, and which formed the contract between the county and the plaintiff. It will hardly do to now say, that the spirit and purpose of the resolution was to fill the quota of Buchanan county and to prevent a draft there; for, since these are not mentioned as conditions, the plaintiff may have acted upon the more patriotic theory, that the object was to provide men to enable the United States Government to crush the rebellion; and that so long as there remained even one man necessary to complete the recent call of 300,000, he would be received thereunder from said county.

The plaintiff enlisted and was mustered into the military service of the United States under the (then) recent call; and further, the county obtained credit for it, and it was allowed upon a subsequent quota assigned to the

county, which was to that extent relieved from liability to a then future draft; and he faithfully performed his service—thereby doing all, and more than, he was required by the resolution to do. Under such circumstances, the county cannot escape the obligation to perform its promise, by insisting upon a spirit and purpose not necessarily or fairly implied by its offer. Nor does the argument that under this construction of the resolution enlistments might have been made under it down to the end of the war, if it was true, at all affect its correctness ; since it was competent for the board of supervisors to withdraw the offer by repealing the resolution at any time.

Contracts of this character should be liberally construed in favor of those, who, under the inducements thus offered, enter into obligations and a service from which they cannot withdraw, and which are so essential to the maintenance of government. The plaintiff in this case has brought himself very clearly within the terms of the resolution, and is therefore entitled to have the judgment

Affirmed.

DILLON, Ch. J., dissents, because when the resolution of the board is read in connection with the call of the President, of October 17, 1863, to which it refers, and which is to be taken as part of it, (13 U. S. Stat. at Large, p. 736), it is to his mind obvious that the plaintiff's case is not within the spirit and purpose, as it clearly is not within the terms, of the offer of the board of supervisors. The view I entertain of this case is in the main coincident with that which is expressed in the written document of the appellant's attorneys.